UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID GIVHAN,

  Petitioner,

v.  Case No. 16-C-315

REED RICHARDSON,

  Respondent.

# DECISION AND ORDER

The petitioner filed this habeas corpus action on March 15, 2016. Judge Pepper screened the petition and concluded that there were four viable, exhausted claims in the petition, although two of them were largely duplicative. ECF No. 4. More recently, the parties consented to the jurisdiction of the undersigned magistrate judge. For the reasons given below, the petition will be denied.

## BACKGROUND

The petitioner was charged with seventeen drug-related counts in Rock County Circuit Court; these included counts based on possession, trafficking, and maintaining a drug trafficking place, and possession of a firearm by a felon.[1] Police obtained much of the evidence from a "trash pull" conducted by Officer Reed and a trash collector. Reed asked the collector to empty the garbage truck's hopper and then to collect the trash outside the petitioner's

---

[1] The facts are taken from the court of appeals' opinion, ECF No. 8-5.

residence. Before collecting any other trash, the collector turned the trash over to Reed, who had been watching from a distance of six to ten houses away. When Reed and another officer eventually searched the trash bags, they found several items of drug paraphernalia. The petitioner appeared at trial *pro se*. A jury convicted the petitioner of all seventeen counts, and he received concurrent sentences ranging from one to six years for sixteen of the charges, plus a sentence of nine years imposed consecutively for the charge of possession with intent to distribute a controlled substance near a school.

The petitioner filed for postconviction relief in the circuit court. After his motion was denied, he appealed, and the Wisconsin Court of Appeals affirmed the trial court. After the Wisconsin Supreme Court denied his petition for review, he filed this federal habeas action.

## ANALYSIS

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is not simply another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases in which the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

2

Case 2:16-cv-00315-SCD   Filed 05/18/20   Page 2 of 10   Document 19

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012). A state-court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. As for the determination of the facts, federal courts will not "characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.' Instead, § 2254(d)(2) requires that we accord the state trial court substantial deference. If "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Brumfield v. Cain*, 576 U.S. 305, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010) (other citations omitted)).

The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id*. at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id*. at 662 (internal citation omitted).

1. **Confrontation Clause**

The petitioner first asserts that the state courts erred by allowing the trash collector to act, in effect, as an out-of-court testimonial witness against him, in violation of the Confrontation Clause of the Sixth Amendment. The Sixth Amendment's Confrontation Clause bars the admission of testimonial hearsay statements unless the declarant is

3

unavailable, and the defendant had a prior opportunity for cross-examination. *United States v. Bermea–Boone*, 563 F.3d 621, 625 (7th Cir. 2009) (quoting *United States v. Tolliver*, 454 F.3d 660, 664–65 (7th Cir.2006) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004))). But, where "there is no hearsay, the concerns addressed in *Crawford* do not come in to play." *Id.* at 626 (internal citation omitted). Hearsay is an out-of-court statement used to prove the truth of the matter asserted. Wis. Stat. § 908.01(3).

Here, the State did not use any of the trash collector's statements—out-of-court or otherwise—and so there are no hearsay nor Confrontation Clause problems. In short, there was no witness statement to confront. The court of appeals therefore correctly found that the Confrontation Clause was not implicated. ECF No. 8-5 at 3.

The petitioner seems to recognize that generally the Confrontation Clause applies to testimonial statements—things people say—rather than conduct. In the petitioner's view, however, the trash collector's actions constitute a "nonverbal conduct statement" that was impermissible hearsay in violation of the Confrontation Clause. ECF No. 10 at 10. The petitioner cites Wis. Stat. § 908.01(1), which defines "statement" to include "nonverbal conduct of a person, if it is intended by the person as an assertion." But while a nonverbal "assertion" can indeed constitute a statement, it must still be in the nature of an assertion, such as nodding one's head, pointing a finger, etc. *See Shier v. Fed. Life Ins. Co.*, 1985 Wisc. App. LEXIS 3923, at *4 (Wis. Ct. App. Dec. 17, 1985). The point is that if a witness is *saying* something—verbal or nonverbal—the statement may be subject to the Confrontation Clause. If the person is merely *doing* something, however, the nonverbal conduct is not assertive. "The reason for requiring that an utterance be intended as an assertion is that when a speaker does not intend to communicate anything, his or her sincerity is not in question and the need for

cross-examination to test perception, memory, and narration is much diminished." *State v. Kutz*, 671 N.W.2d 660, 676 (Wis. Ct. App. 2003).

Here, the trash collector was not communicating anything: the collector simply took the petitioner's trash and then handed it over to Officer Reed. No assertions by the trash collector were introduced into evidence, and so there is no statement to "confront." It is true that the collector undertook certain actions that were highly relevant to the petitioner's guilt; but actions are not statements unless they are assertions. In *United States v. Foster*, for example, the defendant argued that ATF agents violated his Confrontation Clause rights because their "testimony amounted to 'the equivalent of' out-of-court statements by the non-testifying confidential informant. 701 F.3d 1142, 1153 (7th Cir. 2012). The agents testified that the informant had turned over crack cocaine purchased from the defendant, as well as an electronic scale. *Id.* The court rejected the suggestion that the defendant's Confrontation Clause rights were violated, finding that the agents had testified about what the informant *did* rather than what he *said*. The government had "elicited through Agents Casali and Mask that the CI had provided them with drugs, money, a transmitter, and a scale. We have many times determined that testimony regarding an agent's personal observations does not implicate hearsay concerns." *Id.* Ultimately the actions of the two agents "formed the basis for their testimony, and their testimony did not relay 'nonverbal conduct' statements of the CI." *Id.* at 1154.

A defendant made a similar argument in *State v. Ferguson,* after an informant sent an incriminating photo to the police. 2019 Wisc. App. LEXIS 456(Wis. Ct. App. Aug. 20, 2019). The defendant argued that his right to confront a witness was violated because providing the

photo to police was a "statement" and the informant was not called to testify. *Id.* at *6-7. The court rejected that argument:

> We will not assume that by providing the photograph the informant intended to assert anything, much less that Ferguson was involved in crime. Furthermore, there is no possibility that the informant was asserting that Ferguson was involved in the crimes for which he was on trial because the photograph was sent to the officer two months before the shooting.
> ¶16 In short, the informant's act of providing the photograph to the officer was not an out-of-court statement as defined by Wis. Stat. § 908.01(1)(b). Therefore, admitting that photograph into evidence did not violate Ferguson's confrontation rights.

*Id.* at *7-8.

The same holds true here. If turning over illegal drugs to the police is not a testimonial statement, then surely turning over bags of garbage is not testimonial either. The trash collector, by removing the petitioner's trash and then turning it over to the police, was not making any kind of statement—after all, he had no idea what evidence might be inside the trash bags. The State was not relying on Officer Reed to convey statements made by the trash collector but merely to relay Reed's own experience and observations, which he was entitled to provide. The fact that the collector was not called to testify may have impacted the weight the jury gave to the officer's statement, but it does not mean that the petitioner was wrongfully denied the right to confront a witness against him. The court of appeals therefore correctly found no violation of the Confrontation Clause.

### 2. Due Process

The petitioner also argues that the State violated his due process rights when it failed to preserve certain evidence. Trash left on the sidewalk is easily accessible to the public, he argues, and therefore anyone could have placed trash bags outside his house. Specifically, he argues that the police should have preserved photos of the garbage bags and documented how

many bags there were and what evidence came from each bag. By destroying or not preserving this information, he argues that the police destroyed evidence with exculpatory value.

The court of appeals found that, to succeed in a due process challenge, a defendant must show that evidence was apparently exculpatory or destroyed in bad faith. *See* ECF No. 8-5 at 3. The court relied on *State v. Luedke,* 863 N.W.2d 592 (Wis. 2015), which itself relied on the United States Supreme Court's decisions in *California v. Trombetta*, 467 U.S. 479 (1984) and *Arizona v. Youngblood*, 488 U.S. 51 (1988). The court of appeals stated that the petitioner had not shown "how anything about the number of bags, the bags themselves, or knowing in which bag contraband was found would be exculpatory." ECF No. 8-5 at 4. And, without any evidence of bad faith, there was no denial of due process.

The court of appeals was correct. Under the standard set forth in *Trombetta* and *Youngblood,* the destruction of potentially exculpatory evidence violates a defendant's right to due process if (1) the State acted in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that the defendant was unable to obtain comparable evidence by other reasonably available means. *McCarthy v. Pollard*, 656 F.3d 478, 485 (7th Cir. 2011). Here, it remains unclear what would have been exculpatory about the number of garbage bags or a ledger describing which evidence came from which bag. Officer Reed testified that he drove by the home to make sure the trash was outside. *See* ECF No. 8-10 at 144. He then waited in the area while watching the trash until the garbage truck pulled up to remove it. *Id.* at 145. The truck removed all the trash bags outside the petitioner's home. *Id.* at 180. About thirty seconds later, the officer then met with the trash collector around the corner, who turned over the trash bags. *Id.* at 146. In addition to the contraband, inside one of the bags was a mailing addressed to the petitioner's

live-in girlfriend at his residence. *Id.* at 147-48. This mail linked the bags to the petitioner's residence. It is thus unclear what exculpatory value would be gleaned from more detailed information about the trash bags.

It is conceivable, as the petitioner argues, that if the police had photographed the bags (or preserved them), he could have testified that he used a different kind of garbage bag, i.e., that the trash bags were not his. But this is purely speculative. As noted above, one of the bags contained a mailing addressed to the petitioner's live-in girlfriend, which linked the bags to his residence. Thus, although photos of the bags could have given the petitioner a potential line of argument, they could hardly be considered exculpatory: the police could not have imagined that the petitioner used some other kind of trash bag than the ones found outside his house containing indicia linking them to the residence. *See McCarthy*, 656 F.3d at 486 (police who destroyed vehicle could not have known the defendant would later allege that his brakes had failed). Moreover, as the court of appeals found, there was no evidence of bad faith in the failure to preserve evidence here.

The petitioner cites *Kansas v. Malone,* in which the state courts suppressed evidence found in a residential search based on a warrant procured from information found in a trash pull. 323 P.3d 188, 191–92 (Kan. Ct. App. 2014). The Kansas court noted that "where the contraband was found in one trash bag and any evidence showing the source of the trash was found in a separate bag, there was not a sufficient link between the contraband and the residence." *Id. Malone* was a Fourth Amendment case; the courts found insufficient probable cause for the police to have searched the defendant's *residence* based on the evidence found in the trash. Here, by contrast, the evidence underlying the convictions was itself found in the trash. As the petitioner notes, there are no Fourth Amendment issues because curbside trash

8

may be searched without a warrant. Any question here about whether the evidence belonged to the petitioner, rather than someone else, was a factual matter for the jury to decide, as the petitioner himself recognized when he cross-examined Officer Reed. *See* ECF No. 8-10 at 174-75. In short, the court of appeals did not contravene or unreasonably apply any controlling Supreme Court precedent in finding no due process violation here.

### 3. Remaining Claims

The petitioner also argues that the State's Confrontation Clause and due process violations denied him a fair trial and the right to present a full defense. As Judge Pepper's screening order noted, however, these claims are essentially a repackaging of the arguments set forth above into a more generic due process challenge to the fairness of his trial. ECF No. 4 at 4-5. Absent any underlying Confrontation Clause or due process violations, however, there is no other claim that would stand on its own here. The essence of the petitioner's challenge seems to be that not all available evidence was presented at his trial—the trash collector, photos of garbage bags, etc. But these are challenges to the weight the jury should have given the evidence rather than the fairness of the trial itself.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773

(2017). Here, I cannot conclude that the assessment of the merits of the petitioner's claims is debatable by reasonable jurists. Accordingly, a certificate of appealability will be denied.

## CONCLUSION

For the reasons given above, the petition is **DENIED** and the case is **DISMISSED**. A certificate of appealability is **DENIED**. The clerk will enter judgment accordingly.

**SO ORDERED** this 18th day of May, 2020.

STEPHEN C. DRIES
United States Magistrate Judge